■ PEGGY WURM, D.D.S., Respondent-Appellant, v COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, et al., Appellants-Respondents. [766 NYS2d 8] —Judgment, Supreme Court, New York County (Emily Goodman, J.), entered February 5, 2002, which, pursuant to the liability verdict, awarded

plaintiff $708,726 plus interest for unpaid past benefits, $1,794,999.17 plus interest for repudiation damages, and attorneys' fees in an amount to be determined, unanimously modified, on the law, to vacate the award of repudiation damages and attorneys' fees, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered on or about September 5, 2001, which denied defendant's motion for judgment notwithstanding the verdict, unanimously dismissed, without costs, as subsumed in the appeal from the February 5, 2002 judgment.

On July 5, 1988, plaintiff, Dr. Wurm, a 34-year-old dentist, purchased an occupational disability insurance policy from defendant Commercial Insurance Company of Newark, New Jersey. This company was later succeeded by defendant First Unum Life Ins. Co. (First Unum). The policy entitled her to collect $6,000 a month in the event of a "residual disability" during the policy period. The policy defined a residual disability as a condition due to injury or illness which rendered the insured "unable to perform one or more of the substantial and material duties of [her] occupation." It contained a cost of living adjustment rider, but unlike some other First Unum insurance policies, it did not contain a provision which specifically limited compensable claims to those supported by objective medical evidence (*compare Russell v UNUM Life Ins. Co. of Am.*, 40 F Supp 2d 747 [1999] [Unum policy with "self-reported symptoms" limitation]).

In November 1988, plaintiff was injured in a horseback riding accident. She filed a claim that month accompanied by a statement from her attending physician, Dr. Morrison, describing a fracture of the L-1 vertebra. After making a preliminary inquiry, First Unum began paying disability benefits in February 1989. In a "Serious Loss Report" prepared on October 23, First Unum concluded that plaintiff was permanently disabled due to a compression fracture of the spine. It then set aside a $336,000 reserve as its anticipated liability for lifetime benefits.

Thereafter, First Unum sent plaintiff to a number of doctors for examinations. The company also distributed at least two internal memos directing employees to intensify the investigation of plaintiff's injuries. In February 1990, defendant's first doctor, Dr. Yogaratnam, found that plaintiff was disabled and was unable to work at her current job. In June 1992, a second doctor, Dr. Zimmerman, determined that plaintiff's fracture had healed and that there were no objective findings to support her claimed disability. He recommended that plaintiff return to work part time for two months, and full time thereafter. In a

letter dated September 21, 1992, plaintiff's treating physician, Dr. Ferriter, agreed with Dr. Zimmerman that the fracture had healed. However, in this letter he also concluded that plaintiff was still disabled because of her complaints of constant chronic pain.

As part of its investigation, First Unum had a claims representative call plaintiff's office, pretending to be a prospective patient, to try to schedule an appointment. It also placed plaintiff under surveillance and had its investigators videotape her. They reported that plaintiff's actions were consistent with her claimed disability and that she moved as if she were suffering from back pain. Additionally, First Unum sent investigators to plaintiff's home and office, where they spoke with the doorman, a porter and a security guard about her condition.

In October 1992, the insurance company sent plaintiff to a third doctor, Dr. Weiss, who found that plaintiff was partially disabled, but that she could do some work as a dentist, from a seated position, with considerable restriction. Finally, in May 1994, First Unum referred plaintiff to a fourth doctor, Dr. Etkind, who concluded that plaintiff's fracture had healed and that she was no longer disabled. In June 1994, plaintiff's treating physician, Dr. Ferriter, confirmed that there was no objective evidence to support plaintiff's disability and that there was no way to measure her subjective complaints of pain. However, he again concluded that plaintiff was still disabled and unable to resume her employment as a dentist.

On June 23, 1994, First Unum sent plaintiff a check and a letter terminating her benefits, effective May 1994. The letter stated that Dr. Etkind did not certify continued and total disability. The letter continued,

"[E]nclosed is the final check for benefits through the date of your examination. We hope this benefit has been of assistance to you during your period of total disability.

"Should you have any evidence or information which may affect our decision, please submit such to our office for review and consideration.

"Please understand that our action at this time is not to be construed as a waiver of any and all rights and defenses which our Company may have under the policy provisions, all of which are hereby expressly reserved."

According to plaintiff, after she received this letter, a claims manager told her that she would never be paid any future benefits. Plaintiff challenged the termination of benefits, sending the insurance company a letter from her treating physician.

In this July 21, 1994 letter, Dr. Ferriter again opined that although plaintiff's fracture had healed, she continued to complain of chronic pain in her lower back and was thus precluded from returning to work. He noted that the bending and twisting involved in dental work would exacerbate plaintiff's condition. However, the insurance company adhered to its determination.

From June 1994 until October 1995, First Unum failed to send plaintiff premium invoices, and, in October 1995, First Unum notified plaintiff that premiums were past due. It then advised plaintiff, in December 1995, that her policy had lapsed for nonpayment of premiums.

In May 1996, plaintiff commenced this action, asserting claims for breach of contract and bad faith, and for a declaratory judgment finding a violation of General Business Law § 349. The IAS court dismissed defendants' counterclaims for fraud and overreaching as time-barred. Thereafter, First Unum accepted an amended complaint which added a cause of action for repudiation.

The case was tried, and the jury found that plaintiff was unable to perform the substantial and material duties of her occupation as a dentist at the time First Unum terminated her benefits, that she was continuously and permanently disabled from performing the same, and that the disability was the result of her accident. It also found that First Unum had repudiated its policy and had acted in bad faith. The jury rejected plaintiff's claims that First Unum violated General Business Law § 349, and it declined to award punitive damages. Based upon these liability findings, the court then awarded plaintiff unpaid benefits, lump sum future benefits and attorneys' fees. A judgment was entered awarding plaintiff a stipulated amount plus interest for past benefits, and $1,794,999.17 plus interest for lump sum future benefits she would be owed if she remained disabled for the rest of her life. The award for future benefits was to be discounted at a rate of 5.85% and the attorneys' fees set later. This appeal ensued.

Generally, an insured who sues its insurer for failure to pay benefits under a policy may only recover benefits that have already accrued (*Teig v First Unum Ins. Co.*, 282 AD2d 669 [2001], *lv dismissed* 97 NY2d 700 [2002]; *Romar v Alli*, 120 AD2d 420, 421 [1986]; *Gordon v Continental Cas. Co.*, 91 AD2d 987 [1983]). However, there is a narrow exception to this rule which provides for recovery of future benefits where the insurer has repudiated the entire policy. This exception is applicable only where a plaintiff establishes that the insurer has commit-

ted an anticipatory breach by "disclaim[ing] the intention or the duty to shape its conduct in accordance with the provisions of the contract" (*New York Life Ins. Co. v Viglas*, 297 US 672, 676 [1936]). Repudiation occurs when the insurer completely abrogates any "obligation [ever] to make monthly disability payments, as when the insurer refuses to make further payments under the disability provisions of a life policy no matter what proof of disability is given the insurer" (16 Couch on Insurance 3d § 232:43).

Plaintiff claimed that First Unum repudiated its obligations under the instant policy when it terminated her benefits. To make out this claim, she pointed to a statement by First Unum's claims manager that she would not receive any further benefits under the policy. She also argued that the temporary failure to send her premium notices, the payment of which is an essential prerequisite to continuation of the policy, constituted a repudiation. Finally, plaintiff contended that defendant's repudiation was also shown by what she asserted were excessive reexaminations and overreaching investigations of her case with a preordained objective to deny her claim and cancel her policy.

However, plaintiff's allegations do not establish that First Unum repudiated its obligation to make future benefits available to her. With respect to the statements of the claims manager, while the employee denies it, even if the statements were in fact made, they cannot be construed as a repudiation because they have no legal significance. There is no evidence that the claims manager had authority to cancel the policy, which, by its terms, required that any changes must be approved by an "executive officer," which this individual was not.

The initial failure to invoice plaintiff for premiums after the termination of benefits does not establish a repudiation here. The payment of premiums was suspended during the period when plaintiff was deemed disabled. However, it should be noted that in October 1995, before any repudiation claim was raised, First Unum advised plaintiff that premiums were due. It gave plaintiff the opportunity to remit them and only canceled the policy in December 1995 when she failed to do so.

Finally, the evidence does not support plaintiff's assertion that First Unum investigated her claim in bad faith, with the necessary preordained objective of denying benefits. In October 1989, when First Unum initially evaluated plaintiff's condition, it set up a reserve from which to pay plaintiff lifetime benefits. Although First Unum continued to investigate plaintiff's claim, its actions were consistent with the terms of the insurance

policy and its obligation as an occupational disability insurer to track the claimant's medical condition and her vocational abilities. The surveillance to which plaintiff objected is an accepted investigative tool which is used throughout the industry to assess entitlement to a disability benefit. The policy also specifically requires the insurer to call for physical examinations of plaintiff "as often as reasonably needed while a claim is pending."

We also note that during the six years the insurer paid approximately $400,000 in benefits to plaintiff, two doctors, Dr. Zimmerman and Dr. Weiss, informed defendant that plaintiff could return to her job as a dentist. Her own treating physician, Dr. Ferriter, agreed that there was no objective evidence of disability. Nonetheless, First Unum did not terminate plaintiff's benefits until 1994, when Dr. Etkind found that she was no longer disabled, and Dr. Ferriter agreed that "the objective evidence would allow [plaintiff] to return to her job duties as a dentist and perform full duties in that occupation."

Further, when the insurer sent plaintiff a letter terminating her benefits, it did not immediately cancel her policy. Instead, it requested that plaintiff submit for review "any evidence or information which may affect our decision."

Because the chronology of events preceding and following First Unum's termination of plaintiff's benefits does not, as a matter of law, support a finding that the insurer repudiated its agreement to provide plaintiff with insurance, we vacate that portion of the verdict which awarded plaintiff accelerated damages for future disability benefits. However, as there is sufficient evidence to support the jury's determination that plaintiff continued to suffer from a disability at the time of trial, plaintiff should have been placed back "on claim" for benefits under the policy.

Moreover, we decline to award plaintiff attorneys' fees because, viewing the facts even in the light most favorable to plaintiff, we cannot conclude that First Unum had no arguable basis for discontinuing plaintiff's benefits (see Sukup v State of New York, 19 NY2d 519, 522 [1967]; Greenburgh Eleven Union Free School Dist. v National Union Fire Ins. Co., 304 AD2d 334, 336-337 [2003]; Mahler v New England Mut. Life Ins. Co., 267 AD2d 146 [1999]). When First Unum terminated plaintiff's benefits, it did so based upon Dr. Etkind's findings that plaintiff was no longer disabled. This doctor's opinion provided a basis for the insurer's actions at that time. While we are not disturbing the jury's finding that termination was a breach of the policy, we cannot conclude that plaintiff has made the requisite

"showing of such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it" (*Sukup,* 19 NY2d at 522). Concur—Tom, J.P., Mazzarelli, Andrias, Friedman and Marlow, JJ.