16-91-cv(L)
*Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand seventeen.

PRESENT:    REENA RAGGI,
            DENNY CHIN,
            RAYMOND J. LOHIER, JR.,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AMERICAN COMMERCIAL LINES LLC,
NATIONAL LIABILITY & FIRE INSURANCE
COMPANY, INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA, LIBERTY
MUTUAL INSURANCE COMPANY, FEDERAL
INSURANCE COMPANY, and THE NORTHERN
ASSURANCE COMPANY OF AMERICA,
            *Plaintiffs-Appellants-Cross-Appellees*,

        v.                                          16-91-cv(L)
                                                    16-119-cv(XAP)

WATER QUALITY INSURANCE SYNDICATE,
            *Defendant-Appellee-Cross-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFFS-APPELLANTS-CROSS-APPELLEES:

JOHN A.V. NICOLETTI (Richard Walter Stone, II, *on the brief*), Nicoletti Hornig & Sweeney, New York, New York.

FOR DEFENDANT-APPELLEE-CROSS-APPELLANT:

JOHN M. WOODS (Corey R. Greenwald, *on the brief*), Clyde & Co US LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART AND VACATED IN PART**, and the case is **REMANDED** for further proceedings consistent with this order.

Plaintiff-appellant-cross-appellee American Commercial Lines LLC ("ACL") and its excess insurers National Liability & Fire Insurance Company, Indemnity Insurance Company of North America, Liberty Mutual Insurance Company, Federal Insurance Company, and The Northern Assurance Company of America (together with ACL, "plaintiffs") and defendant-appellee-cross-appellant Water Quality Insurance Syndicate ("WQIS") cross-appeal from the district court's judgment entered December 11, 2015 and its underlying orders. The principal question presented is whether WQIS was obliged to pay investigation and defense costs ("defense costs") under a maritime insurance policy (the "Policy") after its $5 million indemnity limit had been reached. By memorandum and order entered March 29, 2010, the district court

granted ACL's motion for partial judgment on the pleadings, holding that WQIS was obliged to pay defense costs even after the indemnity limit had been reached. In addition, by orders entered April 8 and 14, 2014, the district court, adopting the report and recommendation of the magistrate judge (Francis, *M.J.*), granted partial summary judgment to WQIS, concluding that it did not repudiate liability for defense costs under the Policy. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## A.    Background

In July 2008, a barge owned by ACL spilled 300,000 gallons of oil into the Mississippi River. WQIS was ACL's primary insurance carrier. The Policy included Coverage A, which provided $5 million of coverage per vessel for liability associated with the discharge of oil. The Policy also included Coverage C, which provided coverage for "[c]osts and expenses incurred by [ACL] with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under COVERAGE A . . . ." The Policy provided as follows:

> The amounts payable for costs and expenses incurred by [ACL] with the prior consent of WQIS for investigation of, or defense against, any liabilities covered under COVERAGE A . . . shall be in addition to the limits of liability stated in ARTICLE A(1) of PART II.

Article A(1) of Part II referred to the Vessel Schedule, which in turn set forth the limit on Coverage A of $5 million per vessel. The parties agree that WQIS's liabilities under Coverage A reached the $5 million limit on August 27, 2008.

- 3 -

ACL filed this action in September 2009, alleging that WQIS breached the Policy when it refused to cover (1) at least $300,000 for defense costs that ACL had incurred before the Coverage A limit was reached and (2) at least $2 million for defense costs that ACL had incurred and would continue to incur as a result of the July 2008 oil spill after the Coverage A limit was reached. On March 29, 2010, the district court granted ACL's motion for partial judgment on the pleadings, holding that WQIS was required to reimburse ACL for defense costs even after the $5 million indemnity limit was reached.[1] ACL then amended its complaint to add its excess insurers as additional plaintiffs.

On April 8 and 14, 2014, the district court granted partial summary judgment to WQIS on the repudiation issue. Final judgment was entered on December 11, 2015, awarding plaintiffs $3,552,453.05 in defense costs plus interest.

**B.    Extent of WQIS's Liability Under Coverage C**

WQIS appeals the district court's decision to award partial judgment on the pleadings with respect to the scope of Coverage C liability. "We review *de novo* a district court's decision to grant a motion for judgment on the pleadings," and we apply "the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citing *Johnson v. Rowley*, 569 F.3d 40,

---

[1]    In 2011, we dismissed WQIS's interlocutory appeal of that order for lack of appellate jurisdiction. *Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*, 413 F. App'x 387, 389 (2d Cir. 2011).

43 (2d Cir. 2009) (per curiam)).  In doing so, we "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LeFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)).

In New York, "insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012).[2]  The initial interpretation of the contract and whether its terms are ambiguous are questions of law for the court to decide.  *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000).  The court is to interpret the contract "to give effect to the intent of the parties as expressed in the clear language of the contract." *Id.* (quoting *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)); *see Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ("In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use.").  Words and phrases in a contract are to be given their plain meaning and the contract is to be construed "to give full meaning and effect to all of its provisions." *Olin*, 704 F.3d at 99 (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).

---

[2]  The parties agree that New York law applies.

If, however, the court determines that a provision in the insurance contract is ambiguous, it may consider extrinsic evidence to discern the parties' intent at the formation of the contract. *Morgan Stanley*, 225 F.3d at 275-76. A provision is ambiguous if it "could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* at 275 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

Here, the parties dispute the scope of WQIS's liability under Coverage C, which requires WQIS to pay defense costs incurred with respect to "liabilities covered" under Coverage A. Coverage C's limiting clause provides that the amounts payable for defense costs are "in addition" to the $5 million limit on Coverage A liability. App. at 103, 106. WQIS asserts that "liabilities covered" refers to claims that it must *actually* pay out under Coverage A, such that its liability under Coverage C ends after it pays $5 million in liability under Coverage A. ACL, however, argues that "liabilities covered" are claims that WQIS could *potentially* pay out under Coverage A, without reference to the $5 million limit, because the application of the limit would not change "whether an incident is the type of liability covered under Coverage A." Resp. & Reply Br. for Pls.-Appellants-Cross-Appellees at 18.

We conclude that the language of the Policy is ambiguous. While Coverage A and Coverage C could be read, as the district court concluded, as operating independently of each other, a reasonably intelligent person who has considered the context of the Policy as a whole and who is cognizant of the customs and practices of the trade could conclude that WIQS's liability under Coverage C ceased once the Coverage A limit was reached. *See Morgan Stanley*, 225 F.3d at 275 (describing when a contract provision is ambiguous).

First, the phrase "liabilities covered" in the Coverage C insuring provision could reasonably be read to refer only to liabilities that WQIS was required to cover under Coverage A, that is, up to $5 million per vessel. Under this interpretation, any liability above $5 million was not "covered," and therefore defense costs incurred with respect to liabilities above $5 million did not arise from "liabilities covered." *See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995), *modified on other grounds by* 85 F.3d 49, 51 (2d Cir. 1996) (holding, where an insurance policy indemnifies defense costs paid as a result of "occurrence[s] covered," that the insurer need only "reimburse defense costs for claims that are established to be covered through judgment and settlement, and not for claims only potentially falling within the policy's coverage"). A reasonable person could conclude that once the $5 million cap was reached, ACL no longer had any "liabilities covered," and therefore WQIS was no longer obliged to cover defense costs under Coverage C.

- 7 -

Moreover, the phrase "in addition" could be read consistently with that construction as merely clarifying that WQIS accrues Coverage C costs, arising from Coverage A liabilities for which it must actually pay, *on top of* the limit on Coverage A indemnity. Under this interpretation, even though there was no explicit dollar limitation on the amount of Coverage C liability, the parties intended for WQIS to cease paying defense costs under Coverage C once it no longer had to indemnify under Coverage A.

Second, WQIS's interpretation of the Policy is supported by the overall structure and purpose of the Policy. WQIS argues that the parties could not have intended its obligation to indemnify defense costs under Coverage C to continue after the Coverage A limit was exhausted. Such an interpretation of the parties' intent could result in WQIS's paying for defense costs far in excess of the $5 million limit on liability, and it would require WQIS to have responsibility for reimbursing defense costs even when it no longer had an interest in defending or minimizing liability for the incident. A reasonable person could conclude that this could not have been what the parties intended. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006) (holding that contracts should be interpreted to avoid absurd results).

Third, to the extent extrinsic evidence is relevant -- and we think it is -- the record contains extrinsic evidence to support WQIS's assertion that the parties could not have intended that its obligation to pay for defense costs under Coverage C continued

after it exhausted the limits under Coverage A. For example, WQIS submitted two affidavits by its Vice President of Claims declaring that, after WQIS exhausted its $5 million of liability under the Policy, (1) its employees withdrew from the oil spill response and cleanup efforts; (2) plaintiffs separately hired WQIS's spill response team, with WQIS's permission, to continue managing the oil spill response and cleanup efforts; (3) the excess insurers fully reimbursed ACL for all incurred defense costs; (4) ACL did not request or receive WQIS's consent prior to incurring the defense costs; and (5) ACL did not submit a claim for defense costs to WQIS until after filing this action. The record also includes an affidavit from the representative of an excess insurer stating that WQIS ceased its active participation in ACL's claims after reaching $5 million of liability under the Policy. The parties' actions after the $5 million limit was reached provide some evidence of their intent and the customs and practices of the industry. *See Hoyt v. Andreucci*, 433 F.3d 320, 332 (2d Cir. 2006) (holding that extrinsic evidence of the parties' course of conduct may be considered where the contract language is ambiguous); *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 116 (2d Cir. 1994) (concluding that, because the contract language was ambiguous, the district court should have considered extrinsic evidence of the parties' conduct after the alleged breach of contract).

Accordingly, we vacate the award of partial judgment on the pleadings and remand the matter for the district court to assess the extrinsic evidence as well as

any further evidence adduced through discovery and give effect to the intent of the parties.

## C.   Repudiation

Plaintiffs appeal the district court's award of partial summary judgment in WQIS's favor on the issue of repudiation. Although it is not clear that repudiation will remain an issue after the district court resolves the question of interpretation of the Policy on remand, we consider plaintiffs' arguments given that the issue is clear and fully briefed.

We review an award of summary judgment *de novo* and will affirm only if the record, viewed in the light most favorable to the party against whom judgment was entered, shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). In New York, "a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 96 (2d Cir. 2002). The party claiming repudiation must show that the other party "distinctly, unequivocally, and absolutely refused to perform its obligations under the policy," *Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 638 (2d Cir. 1995), by denying its "intention or [] duty to shape its conduct in accordance with the provisions of the contract," *Seward Park Hous. Corp. v. Greater N.Y. Mut. Ins. Co.*, 836 N.Y.S.2d 99, 105 (1st

Dep't 2007) (quoting *Wurm v. Commercial Ins. Co. of Newark*, 766 N.Y.S.2d 8, 12 (1st Dep't 2003)). There is no repudiation if the insurer, in denying liability under the insurance contract, appeals to the authority of the provisions and endeavors to apply them. *Id.*

Here, upon *de novo* review of the record and under the above principles, we conclude the district court properly held that WQIS's conduct constituted a disclaimer of coverage under the contract, not a repudiation of its contractual obligations. We therefore affirm the district court's grant of partial summary judgment on the issue for substantially the reasons given by the magistrate judge in his report and recommendation, which the district court accepted and adopted in its April 8, 2014 order.

\* \* \*

Accordingly, we **AFFIRM** the judgment of the district court to the extent it granted partial summary judgment on the issue of repudiation, and we **VACATE** the judgment to the extent it granted partial judgment on the pleadings on the issue of contract interpretation. We **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk